# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| **A.U.,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 1:19-cv-3512 (TJK/GMH)** |
| | ) | |
| **DISTRICT OF COLUMBIA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MAGISTRATE JUDGE'S
## <u>REPORT AND RECOMMENDATION</u>

In this action under the Individuals with Disabilities Education Improvement Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 794, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, and 42 U.S.C. § 1983, Plaintiff A.U.—a student with disabilities enrolled in the District of Columbia Public Schools ("DCPS")—along with her parents (together, "Plaintiffs"), seek compensatory and injunctive relief for alleged delays in providing special education services to which A.U. is entitled. Defendants—the District of Columbia (the "District"); Lewis Ferebee, Chancellor of DCPS; Hanseul Kang, Superintendent of the Office of the State Superintendent of Education ("OSSE") (erroneously sued as "Hansuel Kang"); and Muriel Bowser, Mayor of the District of Columbia—move to dismiss the complaint in this Court (the "Complaint" or the "federal Complaint") on multiple grounds, arguing that Plaintiffs have (1) needlessly sued Chancellor Ferebee, Superintendent Kang, and Mayor Bowser in their official capacities; (2) improperly served Superintendent Kang; (3) failed to exhaust their

administrative remedies for the claims at issue; (4) failed to state a claim under the Rehabilitation Act or the ADA; and (5) failed to state a claim for OSSE's alleged insufficient oversight of DCPS.[1]

For the reasons that follow, Defendants' motion should be granted.

## I.     BACKGROUND

According to the Complaint, A.U. is a student enrolled in DCPS who suffers from multiple disabilities caused by a rare genetic disorder.  ECF No. 1, ¶ 8.  DCPS determined that A.U. was eligible for special education services pursuant to the IDEA in November 2006, when she was approximately three years old.  *Id.*, ¶¶ 8–9.  The next school year, and each school year thereafter, DCPS determined that A.U. must receive her educational services "in a homebound program" because of her "significant, life-long medical condition."  *Id.* at 2 & ¶ 14.  DCPS' alleged failures to begin such educational services for A.U. at the start of each school year form the basis of this litigation.

A.U.'s parents filed a State complaint with OSSE on August 30, 2011, alleging that DCPS had failed to provide A.U. with special education services at the beginning of the 2011–2012 school year.[2]  *Id.*, ¶ 10.b.  In a decision letter dated October 28, 2011, OSSE upheld the complaint,

---

[1] The relevant docket entries for this Report and Recommendation are (1) the Complaint (ECF No. 1); (2) Defendants' motion to dismiss (ECF No. 4); (3) Plaintiff's opposition to Defendants' motion to dismiss; and (4) Defendants' reply in further support of its motion to dismiss.

[2] An individual seeking to challenge the provision of special education to student pursuant to the IDEA may file a complaint with the State Complaint Office of OSSE (called a "State complaint" in this Report and Recommendation) or may file an administrative due process complaint with the Office of Dispute Resolution, formerly known as the Student Hearing Office.  *See* 20 U.S.C. § 1415(b)(6), (f)(3)(F); *K.W. v. District of Columbia*, 385 F. Supp. 3d 29, 40 (D.D.C. 2019) (noting that the State complaint procedures and the administrative due process procedures are "parallel systems"); OSSE, Office of Dispute Resolution Standard Operating Procedures Manual, at 4, 14–15 (2018) [hereinafter, ODR Operating Procedures], https://osse.dc.gov/sites/default/files/dc/sites/osse/publication/attachments/ Office%20of%20Dispute%20Resolution%20%20Standard%20Operating%20Procedures%20Manual.pdf (last visited June 9, 2020).  Properly-filed complaints under the State complaint procedure are investigated by OSSE and conclude in a written decision that may include a corrective action plan.  OSSE, District of Columbia Formal State Complaint     Policy     &     Procedures     at     5–8     (revised     Nov.     2009), https://osse.dc.gov/sites/default/files/dc/sites/osse/publication/attachments/State%20Complaints%20Policy%20and %20Procedure.pdf (last visited June 9, 2020).  A due process complaint, on the other hand, generally culminates in an impartial due process hearing before a hearing officer and a resulting hearing officer decision ("HOD"), that can be appealed by filing a civil action in federal or state court.  20 U.S.C. § 1415(f), (i); 34 C.F.R. §§ 300.507, 300.511,

noting that DCPS did not have procedures in place to coordinate and begin services to homebound students. *Id.* In response to a State complaint filed with OSSE on August 23, 2012, claiming that DCPS had again failed to provide services at the beginning of the 2012–2013 school year, OSSE ruled in favor of A.U.'s parents and further found that DCPS had not complied with OSSE's prior order requiring DCPS to streamline the process to of providing services to homebound students to ensure that the services would be available at the beginning of the school year, as required by the IDEA. *Id.*, ¶ 10.c.

A.U.'s parents filed a due process complaint on October 7, 2015, alleging that A.U.'s educational services for the 2015–2016 school year had not yet begun.[3] *Id.*, ¶ 10.d. DCPS settled that claim in November 2015, agreeing to provide interim services. *Id.* As to the 2016–2017 school year, Plaintiffs assert that A.U.'s services did not begin until January 9, 2017, although the federal Complaint does not indicate that a State complaint or due process complaint was filed in connection with that alleged failure. *Id.*, ¶ 11. Another State complaint was filed in August 2017 alleging that A.U. had not yet been provided the services to which she was entitled for the 2017–2018 school year. *Id.*, ¶ 10.e. In a decision dated October 17, 2017, OSSE agreed that DCPS had failed to provide A.U. educational services at the beginning of that school year. *Id.* Plaintiffs allege that A.U. did not begin receiving services for that school year until December 11, 2017. *Id.*, ¶¶ 10.e, 12.

In addition, Plaintiffs allege that DCPS did not provide services for the 2018–2019 school year until October 2018 and did not provide services for the 2019–2020 school year until October 2019. *Id.*, ¶¶ 13, 16. Plaintiffs admit that they did not file a due process complaint regarding either

---

300.513, 300.516; OSSE, ODR Operating Procedures, at 14–15, 30–32, 38–39. The IDEA contains no provision allowing a federal or state civil to appeal a decision that grows out of the State complaint system.

[3] The Complaint does not include allegations detailing the provision of A.U.'s educational services for the 2013–2014 or 2014–2015 school years.

of those school years.  *Id.*, ¶ 22.  A.U. further alleges that, through these State complaints and due process complaints, she has been awarded over 1,000 hours of compensatory education that have not been provided or funded by DCPS and that DCPS has failed to reimburse A.U.'s parents for the services that they have been required to pay for in light of DCPS' failure.  *Id.*, ¶ 19.

Plaintiffs assert four causes of action.  Count I alleges that Defendants have violated the IDEA by failing to provide A.U. with special education services at the beginning of the 2017–2018, 2018–2019, and 2019–2020 school years.  *Id.* ¶ 21.  It further states that, although Plaintiffs have admittedly not exhausted their administrative remedies as to any violation of the IDEA during those school years, "[e]xhaustion of A.U.'s claims . . . through an administrative Dues Process Hearing would be futile."[4]  *Id.*, ¶ 22.  Count II alleges that DCPS violated the IDEA by "fail[ing] to provide, fund[,] or reimburse," A.U.'s parents "for compensatory education services OSSE has ordered it to provide, and has unlawfully refused reimbursement for education services [her] parents have paid for when DCPS failed to begin providing services at the beginning of the 2018–2019 and 2019–2020 school year[s]."  *Id.*, ¶ 24; *see also id.* at 10.  Plaintiffs also allege that exhaustion of those claims would be futile.  *Id.*  Count III asserts that DCPS' failure to provide

---

[4] Count I notes that A.U. was not provided with special education services at the beginning of the 2017–2018 school year, as well. ECF No. 1, ¶ 21. However, the heading for the count in the Complaint identifies only the 2018–2019 and 2019–2020 school years as the basis of the count. Moreover, the Complaint does not explicitly allege that exhaustion of administrative remedies regarding the 2017–2018 school year would have been futile, as it does for the 2018–2019 and 2019–2020 school years. *See id.*, ¶ 22. However, Plaintiffs' prayer for relief seeks a declaratory judgment that "DCPS violated the IDEA by failing to provide educational and related services to A.U. at the beginning of the 2017–2018, 2018–2019, and 2019–2020 school years." ECF No. 1 at 10. That is, the Complaint is not clear as to whether Plaintiffs bring a claim for the 2017–2018 school year or only for the 2018–2019 and 2019–2020 school years.

Defendants' motion to dismiss appears to cover all the bases, contending that Count I must be dismissed because Plaintiff failed to exhaust administrative remedies for claims in any of those three school years. ECF No. 4 at 9. In response, however, Plaintiff's opposition addresses its admitted failure to exhaust only as to the 2018–2019 and 2019–2020 school years. ECF No. 8 at 6.

This sloppiness on Plaintiffs' part makes it unclear which school years are the basis for Count I. The undersigned will assume, however, that Plaintiffs base that Count on all three school years—that is, the 2017–2018, 2018–2019, and 2019–2020 school years. That assumption does not affect the analysis below.

4

services to A.U. at the beginning of the 2018–2019 and 2019–2020 school years resulted in A.U. receiving "significantly less educational time to which she was entitled" than that provided to students without disabilities; this allegedly violates the Rehabilitation Act and the ADA. *Id.*, ¶¶ 26–27. Finally, Count IV takes OSSE to task for violating Plaintiffs' civil rights by failing to "take steps to ensure that DCPS complies with OSSE's [o]rders," thus "creat[ing] a loophole that DCPS intentionally exploits for the purpose of denying parents of disabled children their full enjoyment of their rights under the IDEA." *Id.*, ¶¶ 29–31.

Defendants seek to dismiss each count for failure to exhaust administrative remedies. ECF No. 4 at 9, 12, 16. In addition, they argue that Counts III and IV should both be dismissed because Plaintiffs have not alleged facts sufficient to state a claim for relief and because Count IV is untimely; that the individual Defendants, who are all sued in their official capacities, should be dismissed from the case because the claims against them are redundant of the claims against the District; and that Superintendent Kang should be dismissed from the case because she was not properly served. *Id.* at 7–8, 13, 16.

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(5)

On a Rule 12(b)(5) motion to dismiss for insufficient service of process, the plaintiff bears the burden of showing that service of process was proper. *See Hilska v. Jones*, 217 F.R.D. 16, 20 (D.D.C. 2003) (citing *Light v. Wolf*, 816 F.2d 746, 751 (D.C. Cir. 1987)). Thus, the plaintiff "must demonstrate that the procedure employed satisfied the requirements of the relevant portions of Rule 4 [which governs summonses] and any other applicable provision of law." *Jouanny v. Embassy of France in the U.S.*, 220 F. Supp. 3d 34, 37–38 (D.D.C. 2016) (alteration in original) (quoting *Light*, 816 F.2d at 751)). "[U]nless the procedural requirements for effective service of

5

process are satisfied, a court lacks authority to exercise personal jurisdiction over the defendant." *Law Offices of Arman Dabiri & Assocs. P.L.L.C. v. Agric. Bank of Sudan*, No. 17-2497 (RDM), 2019 WL 231753, at *3 (D.D.C. Jan. 16, 2019) (alteration in original) (quoting *Candido v. District of Columbia*, 242 F.R.D. 151, 160 (D.D.C. 2007)).  A court may therefore dismiss a case for improper service.  *See Tom Sawyer Prods., Inc. v. Progressive Partners Achieving Solutions, Inc.*, 550 F. Supp. 2d 23, 26 (D.D.C. 2008).  A court may, however, "'in its sound discretion,' also 'direct that service be effected within a particular period of time.'"  *Arman Dabiri*, 2019 WL 231753, at *3 (quoting *Wilson v. Prudential Fin.*, 332 F. Supp. 2d 83, 89 (D.D.C. 2004)).

**B.    Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint on the basis that it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A court reviewing a 12(b)(6) motion must accept as true the well-pleaded factual allegations contained in the complaint, *Atherton v. D.C. Office of Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009), and construe those allegations "in the light most favorable to the plaintiff[]," *Vick v. Brennan*, 172 F. Supp. 3d 285, 295 (D.D.C. 2016).  While the plaintiff need not make "detailed factual allegations" to avoid dismissal, he or she must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007).  Rather, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  To meet this standard, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Moreover, where a failure to exhaust administrative remedies is clear from the face of the complaint, such as when "the complaint itself states that the plaintiff has

failed to exhaust administrative remedies," a court may dismiss a claim on that ground pursuant to Rule 12(b)(6).[5]  *Mackinac Tribe v. Jewell*, 109 F. Supp. 3d 8, 11 (D.D.C. 2015).

## C.    The IDEA

The IDEA guarantees children with disabilities the right to a free appropriate public education ("FAPE"), which is defined as "special education and related services" provided at public expense that "conform[] with the [student's] individual education program," also known as an IEP.  20 U.S.C. §§ 1400(d)(1)(A), 1401(9); 1412(a)(1).  Thus, the primary vehicle for ensuring that students identified as disabled receive a FAPE is the creation and implementation of an IEP setting forth the services to be provided to meet that student's needs.  20 U.S.C. § 1414(d)(1)(A)–(2)(A); *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 368 (1985) (describing the IEP as the "*modus operandi*" of the IDEA).  The plan is developed by the student's IEP team, which includes the student's parents, teachers, and other educational specialists.  20 U.S.C. § 1414(d)(1)(B).  An IEP contains assessments of the student's needs, strategies to meet those needs, and goals used to measure the effectiveness of the plan.  20 U.S.C. §1414(d)(1)(A).

---

[5] There is some disagreement among the federal judges in this District as to whether exhaustion of administrative remedies under the IDEA is a jurisdictional prerequisite to a federal court hearing the claim, and thus should be the subject of a Rule 12(b)(1) motion to dismiss for lack of jurisdiction, or is, instead, an affirmative defense that must be pleaded by a defendant and should be determined pursuant to the dictates of Rule 12(b)(6) or, if not clear from the face of the complaint, subject to a Rule 56 motion for summary judgment.  *See, e.g.*, *See, e.g.*, *T.H. v. District of Columbia*, 255 F. Supp. 3d 55, 58–59 (D.D.C. 2017) (noting disagreement as to whether the exhaustion requirement for claims brought regarding the provision of a FAPE is jurisdictional and concluding it is not).  The D.C. Circuit has not yet determined that question.  *See, e.g.*, *Brown v. District of Columbia*, 324 F. Supp. 3d 154, 163 (D.D.C. 2018).  However, the better view, in light of Supreme Court precedent cautioning that "[n]ot all mandatory [prefiling] 'prescriptions, however emphatic, are . . . properly typed jurisdictional,'" *Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*, 655 F. App'x 423, 430–31 (6th Cir. 2016) (alterations in original) (quoting *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm., Cent. Region*, 558 U.S. 67, 81 (2009))), is that failure to exhaust such claims does not deprive a federal court of subject-matter jurisdiction.  *See, e.g.*, *Brown*, 324 F. Supp. 3d at 163–64 ("The Court agrees that in light of a spate of Supreme Court cases clarifying the difference between provisions limiting [the courts'] subject matter jurisdiction . . . and claims processing provisions, the IDEA's exhaustion requirement is not jurisdictional because it is not clearly labeled jurisdictional, is not located in a jurisdiction-granting provision, and admits of congressionally authorized exceptions." (internal quotation marks omitted) (alterations in original) (quoting *T.H.*, 255 F. Supp. 3d at 59)).  The undersigned therefore analyzes the exhaustion question pursuant to Rule 12(b)(6).  In any event, the analysis in this case, where Plaintiff has admitted a failure to exhaust, would be the same under either Rule 12(b)(1) or Rule 12(b)(6).

The IEP team must develop an IEP that is "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1*, 580 U.S. __, __, 137 S. Ct. 988, 1001 (2017).

Parents who claim that their child was denied a FAPE may request an administrative due process hearing before an independent hearing officer. 20 U.S.C. § 1415(f)(1). If the parent is "aggrieved by" the hearing officer's determination, the parent may seek judicial review of the HOD in the district court. 20 U.S.C. § 1415(i)(2). The reviewing court, "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). The burden of proof falls upon the party challenging the HOD, who must "at least take on the burden of persuading the court that the hearing officer was wrong." *Reid*, 401 F.3d at 521 (quoting *Kerkam v. McKenzie*, 862 F.2d 884, 887 (D.C. Cir. 1988)).

## III.   DISCUSSION

### A.   Exhaustion of Administrative Remedies

Generally, before plaintiffs can seek redress in federal court for the denial of a FAPE, they must exhaust the available administrative remedies. *See, e.g.*, *Honig v. Doe*, 484 U.S. 305, 326–27 (1988) (discussing the Education of the Handicapped Act, the predecessor statute to the IDEA); *see also, e.g.*, *Cox v. Jenkins*, 878 F.2d 414, 419 (D.C. Cir. 1989) (same); *J.T. v. District of Columbia*, No. 18-cv-2604 (BAH), 2018 WL 6068419, at *3 (D.D.C. Nov. 20, 2018) ("[T]he IDEA [ ] creates a clear order of operations: Alleged violations go first to administrative proceedings; unfavorable administrative decisions are reviewable in a district court." (internal citations omitted) (citing 20 U.S.C. § 1415(f)(1), (i)(2)(A))). Requiring administrative exhaustion

> prevents courts from interrupting the administrative process permanently; it allows the agency to apply its specialized expertise to the problem; it gives the agency an opportunity to correct its own errors; it ensures there will be a complete factual

record for the court to review; and it prevents the parties from undermining the agency by deliberately flouting the administrative process.

*Cox*, 878 F.2d at 419; *see also Douglass v. District of Columbia*, 605 F. Supp. 2d 156, 167 (D.D.C. 2009) (exhaustion "allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children" (quoting *Hoeft v. Tucson Unified Sch. Dist.,* 967 F.2d 1298, 1303 (9th Cir.1992))).  In the District of Columbia, to exhaust a claim under the IDEA, a plaintiff must file a due process complaint with OSSE's Office of Dispute Resolution ("ODR"), have a hearing before an impartial hearing officer, and receive a decision on that complaint.  20 U.S.C. § 1415(b)(6), (f)(1); ODR Operating Procedures at 4, 14–15.  "Any party aggrieved" by that decision may file a civil action with respect to the complaint.  20 U.S.C. § 1415(i)(2)(A).

"The IDEA explicitly extends its exhaustion requirement to any claims for relief that are available under the IDEA, regardless of the statutory basis for such claims."  *Douglass v. District of Columbia*, 750 F. Supp. 2d 54, 60 (D.D.C. 2010); *see* 20 U.S.C. § 1415(*l*).  Thus, any claim that "seek[s] relief [from a federal court] for the denial of a FAPE," whether brought "under the ADA, the Rehabilitation Act, or similar laws," must comply with the IDEA's exhaustion requirements. *Fry v. Napoleon Cmty. Sch.*, 580 U.S. __, __, 137 S. Ct. 743, 752 (2017).  To determine "whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint.'"  *Id.*

Here, there is not much dispute that each of Plaintiffs' claims seeks relief for the denial of a FAPE.  Count I explicitly alleges denial of a FAPE (ECF No. 1, ¶ 21); Count II seeks reimbursement for expenses allegedly incurred because of the denial of a FAPE (*id.*, ¶ 24); and

Count III, although brought pursuant to the ADA and Rehabilitation Act, seeks relief for delays in providing Plaintiff educational services required by her IEP (*id.*, ¶ 26).

The precise statutory basis for Count IV, regarding OSSE's alleged failure to oversee DCPS' compliance with the IDEA, is not stated in the Complaint, *see id.*, ¶¶ 28–31, but it is likely 42 U.S.C. § 1983.  First, the claim charges the District (through OSSE) with violating Plaintiffs' "Civil Rights," *id.* at 9, a claim well within Section 1983's wheelhouse, *see, e.g., Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 690 (1978) (holding that "municipalities and other local government units" may be sued for civil rights violations).  Second, in *K.W.*, analyzed an almost identically-pleaded claim pursuant to Section 1983, and both of the parties rely on that case in their own discussions of Count IV.  *See K.W.*, 385 F. Supp. 3d at 42 (analyzing a nearly identical claim filed by the same counsel representing Plaintiffs here as a claim under Section 1983); ECF No. 4 at 16–17 (Defendants' motion to dismiss contending that *K.W.* supports dismissal of Count IV for failure to state a claim); ECF No. 8 at 17–18 (Plaintiffs' opposition arguing that *K.W.* supports its argument that Count IV states a claim).  In any case, Plaintiffs' opposition to the motion to dismiss makes clear that Count IV, too, seeks relief for the alleged failure to provide A.U. a FAPE.[6]  ECF No. 8 at 16 (arguing that this claim should survive because Plaintiffs have sufficiently alleged that OSSE did not "seek to remedy" DCPS' denial of a FAPE caused by the late start of Plaintiff's educational services during the relevant school years); *see also, e.g., Douglass*, 605 F. Supp. 2d at 166–67 (finding that a Section 1983 claim was subject to the IDEA's exhaustion requirements because "[t]he dispositive question generally is whether the plaintiff has alleged injuries that could

---

[6] Moreover, Defendants argue, among other things, that this claim should be dismissed because Plaintiffs failed to exhaust her remedies under the IDEA.  ECF No. 4 at 16–17.  Plaintiffs do not contend that the claim is not governed by the IDEA's exhaustion requirements, but rather generally argue that any failure to exhaust under the IDEA is excused because it would be futile.  ECF No. 8 at 6–11.  That is, Plaintiff does not appear to dispute that this claim, too, is based on the denial of a FAPE and therefore subject to the exhaustion requirements of the IDEA.

be addressed to any degree by the IDEA's administrative procedures" (quoting *Padilla v. Sch. Dist. No. 1 of the City and Cty. of Denver*, 233 F.3d 1268, 1274 (10th Cir. 2000))). Thus, each of the claims alleged here is subject to the IDEA's exhaustion requirement, because the "gravamen" of each "seek[s] relief for the denial of a FAPE." *Fry*, 580 U.S. at __, 137 S. Ct. at 752 (2017). Moreover, it is clear from the face of the Complaint that Plaintiffs have not exhausted their administrative remedies as to any of the claims set forth here. ECF No. 1, ¶¶ 10.e, 21–22; *see also* ECF No. 8 at 6.

Plaintiffs do not argue that they exhausted administrative remedies for any of their claims. Rather, they contend that their failure to exhaust should be excused because exhaustion would be futile. ECF No. 8 at 6–11. Administrative exhaustion may be excused only in certain narrow circumstances, such as "upon a showing of futility or inadequacy of the administrative process." *K.W.*, 385 F. Supp. 3d at 41; *see also Massey v. District of Columbia*, 400 F. Supp. 2d 66, 70–71 (D.D.C. 2005) ("Exhaustion is not required, however, when it is demonstrated that continuing through the administrative process would be futile or inadequate."). However, the D.C. Circuit has warned that "the exhaustion requirement may be waived in 'only the most exceptional of circumstances.'" *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105, 106 (D.C. Cir. 1986) (quoting *Peter Kiewit Sons' Co. v. U.S. Army Corps of Eng'rs*, 714 F.2d 163, 168–69 (D.C. Cir. 1983)). Here, Plaintiffs assert that, in light of the repeated and identical violations of A.U.'s right to a FAPE, "[e]xhaustion in this case is futile." ECF No. 8 at 6. They point out that OSSE has previously found that DCPS' failure to provide A.U. with educational services "until well after the school year has begun violated the IDEA," making the outcome of any due process hearing on her complaints about the school years at issue is "clear"—"DCPS is continuing to violate the IDEA by engaging in the very practices OSSE repeatedly has held violated the IDEA

11

in past years." *Id.* at 7.  They further argue that, although hearing officers can "set out appropriate remedial action," they have "no power to order DCPS to take that remedial action." *Id.* at 8. According to Plaintiffs, because "DCPS has made clear, year after year, that it believes that orders from OSSE to begin services on time mean nothing and need not be followed, there is no reason to believe that an order from a [h]earing [o]fficer now will be followed." *Id.*

Given Plaintiffs' prior success in prosecuting similar claims administratively and the District's history of noncompliance, their argument seeking to excuse their failure to exhaust is not without appeal.[7]  Nevertheless, Plaintiffs' argument fails to take into account D.C. Circuit precedent on the futility exception.  In *Cox v. Jenkins*, the court of appeals refused to apply the futility exception in the context of the IDEA's predecessor statute; it stated, in part, that there was "no evidence whatsoever that it would have been futile for the [student's parents] to challenge" DCPS' proposal for the student's placement through the administrative process *because* the parents had successfully challenged the identical proposed placement the previous year "and there [was] no reason to think that [they] would not have been successful" again "if their case had merit." 878 F.2d 414, 419–420 (D.C. Cir. 1989).  The D.C. Circuit has since cited *Cox* for the rule that the futility exception is "available only where [an] adverse decision [at the administrative level] is virtually certain." *Anderson ex rel. Anderson v. District of Columbia*, 877 F.2d 1018, 1023 (D.C. Cir. 1989).  Those interpretations are consisted with earlier precedent defining the futility exception: "[r]esort to the administrative process is *futile* if the agency will almost certainly deny

---

[7] Defendants do not dispute that Plaintiffs have succeeded in the State complaint process multiple times, yet DCPS continues to fail to provide educational services to A.U. at the beginning of each school year.  ECF No. 1, ¶¶ 10.b–e, 18.  Instead, they boast that DCPS obeyed "the only legally binding order [it] received" concerning A.U.—the 2008 order from a hearing officer to provide compensatory education.  ECF No. 11 at 3; *see also* ECF No. 4 at 11 ("DCPS' action in response to the *only* due process complaint Plaintiffs have filed does not show that DCPS" has been recalcitrant).  The suggestion that DCPS need comply with the IDEA only when ordered to do so by a hearing officer is underwhelming.  However, as discussed below, in light of D.C. Circuit precedent and the principles underlying the requirement of administrative exhaustion, Plaintiffs' should not be excused from exhausting their administrative remedies on the facts of this case.

and relief either because it has a preconceived position on, or lacks jurisdiction over, the matter."
*Randolph-Sheppard*, 795 F.2d at 107; *see also id.* at 105 (stating that the futility exception "applies
where 'following the administrative remedy would be futile *because of certainty of an adverse
decision*'" (quoting 3 Kenneth Culp Davis, *Administrative Law Treatise* § 20.07 (1958))).  Here,
Plaintiffs' argument rests on the precise opposite contention: they are convinced that, if they were
to present their case before a hearing officer, they would be successful.  ECF No. 8 at 7.  The
futility exception, therefore, does not apply.

The "inadequacy" exception is similarly constrained.  *Randolph-Sheppard* teaches that,
while the futility exception applies where the agency is inflexible in its view that the claimant is
not entitled to relief, "[t]he administrative process is *inadequate* where the agency has expressed
a willingness to act, but the relief it will provide through its action will not be sufficient to right
the wrong."  795 F.2d at 107.  "When determining whether a remedy will be adequate, a court
must consider all potential methods at the agency's disposal to remedy a violation if one is found."
*Id.*

At first blush, this might seem a more promising avenue for Plaintiffs.  After all, one of
their major arguments is that the administrative process cannot remedy DCPS' alleged violation
of the IDEA because hearing officers lack the power to legally compel DCPS to implement the
relief they formulate to redress the denial of a FAPE.  ECF No. 8 at 8.  The premise appears to be
correct; the inability of a hearing officer to compel compliance with the remedy in an HOD
underlies the D.C. Circuit's opinion in *B.D. v. District of Columbia*, which held that the plain
language of the IDEA does not support an action to enforce an HOD by the party prevailing in the
administrative proceedings and suggested alternative routes for enforcement.  817 F.3d 792, 800–
802 (D.C. Cir. 2016) (suggesting an action under Section 1983 or "an IDEA enforcement suit

premised on an implied cause of action" would be the appropriate way to compel DCPS to act in accordance with an HOD); *see also id.* at 804 (Millett, J., concurring) (suggesting that "parents facing a lack of compliance might be able to bring another due process complaint to enforce the prior decision and, if necessary, seek judicial review of any denial of needed relief in that proceeding"). But Plaintiffs' argument proves too much. If administrative exhaustion were inadequate because hearing officers are generally incompetent to enforce their awards, then the requirement of administrative exhaustion would always be excused in IDEA cases. That would stretch the rule that "the exhaustion requirement may be waived in 'only the most exceptional of circumstances.'" *Randolph-Sheppard*, 795 F.2d at 106, well past its breaking point.

Indeed, cases following *Randolph-Sheppard* show that, in determining whether an administrative procedure is inadequate, courts do not inquire as to the enforcement capacity of the administrative process, but rather ask whether that process has the power to fashion relief that "is proportional to the claimant's injury." *Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 50 n.9 (D.D.C. 2005). For example, in *Cox*, the D.C. Circuit found that claims that DCPS failed to comply with an HOD were still subject to the administrative exhaustion requirement, rejecting the plaintiffs' argument that, because the IDEA does not include a provision for enforcing administrative orders, exhaustion would have been futile. 878 F.2d at 420–21 (stating that "[t]he District Court appears to have based its finding of futility on DCPS' alleged refusal to comply with the hearing officer's June 1985 ruling. However, we find that . . . any noncompliance involved matters that could and should have been addressed through the administrative process," such as the hearing officer's recommendations as to DCPS' review of evidence and revision of the student's IEP). Moreover, courts have found that administrative processes are adequate even if the agency lacks the authority to provide certain relief that would be available in federal court.

*See, e.g.*, *Washington v. District of Columbia*, 538 F. Supp. 2d 269, 277 (D.D.C. 2008) (finding that an agency's inability to order punitive damages that would be available in federal court did not excuse failure to exhaust on the basis of inadequacy). The focus, rather, is on whether the claimant can receive an award from the administrative proceedings that addresses the claimed wrong and not whether that award will ultimately be enforced. *Cf. Douglass*, 605 F. Supp 2d at 166 ("[A] court's 'primary concern in determining whether a plaintiff must utilize the IDEA's administrative procedures relates to the source and nature of the alleged injuries for which he or she seeks a remedy, not the specific remedy itself.'" (quoting *Padilla*, 233 F.3d at 1274)). Under the IDEA, "[a] Hearing Officer has broad discretion to fashion a remedy where he finds that a school district has denied a child a FAPE." *Lopez-Young v. District of Columbia*, 211 F. Supp. 3d 42, 57 (D.D.C. 2016). Here, Plaintiffs admit that A.U. has been awarded relief in the administrative process in the form of compensatory education. ECF No. 1, ¶ 19. Thus, this situation does not fit into the narrow exception to exhaustion where the administrative procedure is deemed inadequate to address the claimed wrong.

To be sure, recently, the court in *K.W.* appears to have interpreted the IDEA's exhaustion requirement more loosely, excusing the plaintiffs from exhausting administrative remedies under the futility exception. 385 F. Supp. 3d at 41–42. In that case, on which Plaintiffs heavily rely (ECF No. 8 at 8–10), the student's parents filed their first due process complaint in March 2015 challenging DCPS' proposed IEP and school placement for the 2014–2015 school year (during which the student attended a private special education school), *K.W.*, 385 F. Supp. 3d at 34. The hearing officer found that the proposed IEP denied the student a FAPE and ordered DCPS to reimburse the parents for the private school tuition for that school year. *Id.* "[That] cycle repeated itself three more times" for the 2015–2016 school year, the 2016–2017 school year, and the 2017–

2018 school year. *Id.* at 34–35. For each of those years, DCPS proposed the same level of services (fifteen hours per week of special education) and, either through settlement (for the 2016–2017 school year) or through a decision by a hearing officer finding the IEPs unsatisfactory (for the 2015–2016 and 2017–2018 school years), DCPS was required to pay the student's tuition at the private school. *Id.* For the 2018–2019 school year, DCPS again proposed an IEP comprising fifteen hours per week of special education. *Id.* at 35. Without engaging in the administrative process, the student's parents filed an action in this District alleging that DCPS' proposal for the 2018–2019 school year once again denied the student a FAPE. *Id.* Addressing the defendants' argument that the action should be dismissed for failure to exhaust administrative remedies, the court recognized that futility "presents a high bar at law and is not a finding [to be] . . . made lightly," but nevertheless found that the plaintiffs had "shown the futility of continuing to joust annually with DCPS, which continually attempts to flaunt its legal obligations with impunity." *Id.* at 41–42. The court noted that the finding as to futility would not "interrupt the administrative process improperly" because it was "only the obduracy of DCPS" that made the claims futile. *Id.* at 42. Further, the court doubted that "DCPS could rely on alleged 'specialized expertise' or . . . deserve[d] the opportunity to correct its own errors" because the agency had evinced "no scintilla of effort . . . to correct its own mistakes," but rather had "compounded them." *Id.* Nor was there an indication that the plaintiffs had "attempt[ed] to undermine the administrative process deliberately"; instead, they had "dutifully engaged in the process for four years" but were nevertheless presented with "an IEP that did not respect [the student's] rights under law." *Id.* The court conclude that DCPS' actions "indicate[d] an unyielding position . . . , in the face of clear findings to the contrary" that the proposed IEP for the 208–2019 school year was insufficient. *Id.* Therefore, exhaustion was excused as futile. *Id.*

16

But *K.W.* fails to deal head on with the spare interpretation of the futility and inadequacy exceptions that the D.C. Circuit established in *Randolph-Sheppard* and applied in cases like *Cox* (a case under the IDEA's predecessor statute).   *See Cox*, 878 F.2d at 419–420; *Randolph-Sheppard*, 795 F.2d at 107.   Indeed, *K.W.* appears to contravene the rule that administrative proceedings can be characterized as futile "only where [an] adverse decision is virtually certain," *Anderson*, 877 F.2d at 1023 (citing *Cox*, 878 F.2d at 420), by extending the futility exception, as Plaintiffs seek to do here, to cases where a *favorable* decision is alleged to be "virtually certain," *see K.W.* 385 F. Supp. 3d at 42 ("These actions indicate an unyielding position held by DCPS, in the face of clear findings to the contrary by multiple Hearing Officers.   The Court finds that exhaustion . . . would [therefore] be futile.").

In any case, even assuming that the futility and inadequacy exceptions are sufficiently flexible to excuse exhaustion in cases where the claimant is likely to receive a favorable decision at the administrative level and the agency can award meaningful relief, the undersigned would still recommend dismissing this action for failure to exhaust.   Administrative exhaustion serves many purposes, among them "prevent[ing] the parties from undermining the agency by deliberately flouting the administrative process," "ensur[ing] there will be a complete factual record for the court to review," and "allow[ing] the agency to apply its specialized expertise to the problem." *Cox*, 878 F.2d at 419.   Those three functions, in particular, counsel in favor of requiring exhaustion here.

First, as to the proscription against "flouting the administrative process," *id.*, Plaintiffs attempt to fit this case into the mold set by *K.W.*, where the Court found the principle "critical but irrelevant," 382 F. Supp. 3d at 41.   But there are material differences between these Plaintiffs'

17

treatment of the administrative process and the *K.W.* plaintiffs' treatment of that process.  As Defendants point out, in *K.W.*, "the plaintiffs had utilized the administrative process for four consecutive years, received favorable outcomes from several different hearing officers, and filed suit under Section 1983 in federal court to enforce the most recent favorable ruling."  Here, Plaintiffs last attempted to exhaust their administrative remedies in 2015 with regard to the 2015–2016 school year.  ECF No. 11 at 3–4.  Although Plaintiffs filed a State complaint with OSSE (which is, it bears repeating, insufficient to exhaust administrative remedies under the IDEA) in connection with the 2017–2018 school year, they did not engage in any formal administrative proceedings for the 2016–2017 and 2018–2019 school years.  That is, unlike the plaintiffs in *K.W.*, Plaintiffs here have repeatedly either sidestepped or ignored the exhaustion process.

Second, the Court would benefit from a record developed in administrative proceedings. Plaintiffs here allege that Defendants have violated Section 504 of the Rehabilitation Act—which requires them to show that Defendants, "solely by reason of [A.U's] disability, [ ] excluded [her] from the participation in, [ ] denied [her] the benefits of, or [ ] subjected [her] to discrimination," 29 U.S.C. § 794(a)—and violated the ADA—which requires them to show that Defendants, "by reason of [A.U.'s] disability," excluded her from participation in or denied her the benefits of DCPS' services, programs, or activities of a public entity or subjected her to discrimination, 42 U.S.C. § 12132.  This is a different question than the one Plaintiffs assert they have previously presented to OSSE—whether A.U. was denied a FAPE because her educational services did not start at the beginning of the school year.  ECF No. 1, ¶ 10.b–e; ECF No. 8 at 6–7.  Indeed, courts have held that merely showing the denial of a FAPE is not sufficient to succeed on a claim under the Rehabilitation Act or the ADA.  *See, e.g.*, *Brown v. District of Columbia*, 324 F. Supp. 3d 154, 164 (D.D.C. 2018) ("Plaintiff failed to state a claim under Section 504 of the Rehabilitation Act

because he failed to allege that 'something more than a mere failure to provide the "free and appropriate public education" required by the IDEA occurred.'" (quoting *D.L. v. District of Columbia*, 109 F. Supp. 3d 12, 23 (D.D.C. 2015))); *Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 126 (D.D.C. 2011) ("[S]omething more than a mere violation of the [IDEA] is necessary to show a violation of the ADA.").  As the court found in *Douglass*, "the first purpose of the IDEA's exhaustion requirement—the creation of an administrative record helpful to a reviewing court's resolution of Plaintiff's Section 504 claim" can assist a court in determining whether the challenged conduct "in fact constitutes discrimination 'solely' due to disability."  *Douglass*, 750 F. Supp. 2d at 62–63; *see also, e.g.*, *Ruecker v. Sommer*, 567 F. Supp. 2d 1276, 1293 (D. Or. 2008) (noting that the "complete administrative record" produced by the exhaustion of administrative remedies would aid the court in evaluating the plaintiff's Rehabilitation Act claim).  The same is certainly also true of the ADA claim here, which requires a similar showing "that denial or prohibition was 'by reason of' [A.U.'s] disability."  *Jackson*, 826 F. Supp. 2d at 126.

Third, although Plaintiffs assert that there is no need for the agency to employ its expertise to this dispute because it is "clear" that "not starting school on time when there is plenty of time to prepare violates the IDEA" (ECF No. 8 at 11), they ignore that there are other issues presented here that might benefit from administrative review.  Count II alleges, among other things, that DCPS has "unlawfully refused reimbursement for educational services A.U.'s parents have paid for when DCPS failed to begin to provide [her] services at the beginning of the 2018–2019 and 2019–2020 school year[s]" because it has insisted that "a DCPS-approved licensure is a mandatory prerequisite for [such] payments." ECF No. 1, ¶¶ 19, 24.  A hearing officer may determine whether DCPS is nevertheless required to reimburse parents for educational expenses and, if so, which educational expenses must be reimbursed.  *See, e.g.*, *S.B. v. District of Columbia*, 783 F. Supp. 2d

44, 53 (D.D.C. 2011) (affirming a hearing officer's determination as to "which related services Plaintiffs were entitled to receive reimbursement for"); *see also, e.g.*, *Damarcus S. v. District of Columbia*, 190 F. Supp. 3d 35, 59 (D.D.C. 2016) (finding that the hearing officer "erred in failing to award reimbursement for . . . [a] neuropsychological evaluation" of the student). Additionally, questions of whether a school district must or should require certain certifications is a question of educational policy within the expertise of DCPS. *See Douglass*, 750 F. Supp. 2d at 63 ("The soundness of the District's alleged practice of not requiring dual certification . . . implicate[s] matters of educational policy that would benefit from an administrative record, and the Court is not in a position to opine upon these matters in the first instance."). Moreover, assuming that it is a foregone conclusion that Plaintiffs will win on the issue of whether A.U. was denied a FAPE when her educational services did not begin at the start of the relevant school years, the question of an award of compensatory education will still need to be addressed. Although federal courts are empowered to fashion such remedies, they lack the expertise of hearing officers and other officials responsible for a child's education. For that reason, the calculation of such an award is frequently remanded for consideration by the agency in the first instance. *See, e.g.*, *D.S. v. District of Columbia*, 699 F. Supp. 2d 229, 235–36 (D.D.C. 2010) (collecting cases ordering remands to the agency to use its expertise to craft compensatory education awards); *see also, e.g.*, *Be. R. ex rel. Chr. R. v. Tenn. Dep't of Educ.*, No. 3:18-cv-00754, 2020 WL 409745, at *2 (M.D. Tenn. Feb. 15, 2019) ("The federal courts are not the entities best equipped to craft and IEP or remedial substitutes. They are, instead, suited to reviewing detailed administrative records, such as those that would be furnished through due process hearings . . . under the IDEA." (quoting *Long v. Dawson Springs Indep. Sch. Dist.*, 197 F. App'x 427, 433–34 (6th Cir. 2006))). Thus, the agency should have the opportunity to utilize its expertise to decide these issues.

In sum, the undersigned finds that Plaintiffs have failed to exhaust administrative remedies and that such failure is not excused.  If accepted, that finding is sufficient to support dismissal of this action in full.  However, as discussed below, there are additional reasons to dismiss various claims and defendants in this action.

**B.**      **Failure to State a Claim under the ADA or the Rehabilitation Act (Count III)**

To state a claim under the ADA, a plaintiff must allege (1) that she is a qualified individual with a disability; (2) that the defendant public entity denied her the benefits of or prohibited her form participating in the defendant's service, program, or activities, and (3) that the denial of prohibition was "by reason of" her disability.  *Jackson*, 826 F. Supp. 2d at 126.  To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must allege facts sufficient to show that "he or she was discriminated against solely by reason of his [or her] handicap."  *B.D.*, 66 F. Supp. 3d at 80 (alteration in original) (quoting *Walker v. District of Columbia*, 157 F. Sup. 2d 11, 35 (D.D.C. 2001)).  "In analyzing claims of discrimination, courts frequently interpret the ADA and the Rehabilitation Act analogously," *B.D.*, 66 F. Supp. 3d at 80 & n.7, except that the causation standard under the Rehabilitation Act, which requires a showing that the plaintiff was discriminated against "solely" by reason of her disability, "is higher than that under the ADA," which is satisfied where the plaintiff pleads facts to show that her disability "played a 'motivating role' in the denial of benefits," *Alston v. District of Columbia*, No. 07-cv-0682 (RMU), 2010 WL 11667917, at *12 (D.D.C. Mar. 30, 2010).  Moreover, when proceeding under the Rehabilitation Act, a plaintiff must plead facts showing that the defendants "exhibited either 'bad faith or gross misjudgment.'"  *B.D.*, 66 F. Supp. 3d at 80 (quoting *Walker*, 157 F. Sup. 2d at 35); *see also Alston v. District of Columbia*, 770 F. Supp. 2d 289, 298 (D.D.C. 2011) (stating that the "heightened causation standard codified in the statutory text" of the Rehabilitation Act requires a plaintiff to

"demonstrate 'bad faith or gross misjudgment on the part of the government defendants.'" (quoting *Douglass*, 605 F. Supp. 2d at 168)).

As relevant here, Plaintiffs allege that (1) DCPS determined that A.U. requires homebound instruction; (2) OSSE found in 2011 that DCPS did not have procedures in place to coordinate and begin educational services to homebound students at the beginning of the school year and in 2012 that such procedures had not been successfully implemented; (3) DCPS settled Plaintiffs' claim that it failed to provide educational services to A.U. at the beginning of the 2015–2016 school year and agreed to provide services; (4) DCPS repeatedly failed to provide educational services to A.U. at the beginning of the subsequent school years, including during the 2016–2017, 2017–2018, 2018–2019, and 2019–2020 school years; and (5) DCPS provided educational services for students without disabilities at the beginning of the school year in each of the relevant years. ECF No. 1, ¶¶ 10–14, 16–17, 26. Defendants contend that these alleged facts fail to meet Plaintiffs' pleading burden under the ADA or the Rehabilitation Act. ECF No. 4 at 14–15; ECF No. 11 at 5–6. The argument should be rejected.

A plaintiff may show that defendants violated the Rehabilitation Act when, "in violating the IDEA, defendants failed to exercise professional judgment in such a way as not to depart grossly from accepted standards among educational professionals." *D.L. v. District of Columbia*, 187 F. Supp. 3d 1, 4 (D.D.C. 2016); *see also, e.g.*, *Easter v. District of Columbia*, 128 F.3d F. Supp. 3d 173, 179 (D.D.C. 2015) ("[L]iability will not be imposed so long as the officials involved exercised 'professional judgment, in such a way as to not depart grossly from accepted standards among education professionals.'" (quoting *Walker,* 969 F. Supp. at 797 (D.D.C. 1997))). In *Easter*, the plaintiff alleged that DCPS "(1) failed to offer adult education to someone with his special education needs, and (2) suggested he waive his right to FAPE in order to attend school

with his same-age peers."  128 F. Supp. 3d at 179.  The court found that those allegations "support

a Rehabilitation Act claim," explaining:

> While adult students who do not have disabilities may attend alternative programs
> with their same-age peers, [the plaintiff] was denied a free appropriate education at
> an alternative program because he required more special education services than
> any program for adult students could provide.  In other words, [the plaintiff] alleges
> he was denied the same services as other adult students *solely because of* his
> disability.  Further, [he] alleges that he was given the choice between waiving his
> right to special education in order to attend school with his same-age peers or
> attending a traditional high school as a ninth grader.  A reasonable fact finder may
> conclude that such a choice was grossly out of line with accepted educational
> standards.

*Id.*  Here, Plaintiffs allege that DCPS did not provide A.U. with the education to which she was

entitled because, during the relevant terms, it would not or could not provide the required services

for the full school year.  ECF No. 1, ¶¶ 10–13, 16, 26.  They further allege that non-disabled

students were provided appropriate educational services for the full school year in each of the years

that A.U. was not.  ECF No. 1, ¶ 17.  That is, they have pleaded facts showing that students without

disabilities enjoy a FAPE for an entire school year; however, as a result of the fact that A.U.'s

disabilities require her to receive special education instruction at home—a finding that DCPS has

repeatedly ratified in her IEP for every school year since the 2007–2008 school year (ECF No. 1,

¶ 14)—she has been denied a FAPE for part of each of those school years.  Under the reasoning

of *Easter*, that appears to meet the standard for alleging that she was denied a FAPE solely because

of her disability.

Moreover, it is not difficult to see how a fact-finder might determine that a decision—or

series of decisions—that resulted in denying a student any instruction for up to two months out of

a ten-month school year was a blatant departure from accepted educational standards.  For

example, in *B.R. ex rel. Rempson v. District of Columbia*, the court stated that, if DCPS assessed

a student as needing full-time special services but placed her in a situation in which she could not

receive those services, it would be appropriate to "characteriz[e] [ ] such conduct [as] marked by gross misjudgment or bad faith." 524 F. Supp. 2d 35, 42 (D.D.C. 2007). Here, DCPS is responsible for providing A.U. with a FAPE; DCPS has also determined that A.U. should "receive her special education and related services in a homebound program." ECF No. 1, ¶ 14. Yet it has also allegedly failed to provide those services for approximately twenty percent of the school year for multiple school years. *Id.*, ¶¶ 10–13. This is sufficient to allege gross misjudgment or bad faith.

Plaintiff's allegations that this failure has been repeated over a series of years, notwithstanding the fact that DCPS has repeatedly been warned about it, are also relevant. In *Torrence v. District of Columbia*, Judge Kollar-Kotelly described Section 504 as concerned with "the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program." 669 F. Supp. 2d 68, 72 (D.D.C. 2009) (quoting *Mark H. v. Lemahieu*, 513 F.3d 922, 929 (9th Cir. 2008)). She concluded that the Rehabilitation Act, when applied in the context of education, "is attuned to programmatic failures while the IDEA is focused on the individual student who needs special education." *Torrence*, 669 F. Supp. 2d at 72. As noted above Plaintiffs have alleged that OSSE twice cautioned DCPS about the insufficiency of its procedures to provide special education services to students who must be educated at home. ECF No. 1, ¶¶ 10.b–c. Nonetheless, the same deficiency occurred in subsequent years. *Id.*, ¶¶ 10.d–e, 11–13, 16. That sufficiently alleges a "programmatic failure[ ]." *Torrence*, 669 F. Supp. 2d at 72.

Defendants' reliance on *Alston* is unavailing. In that case, as Defendants note, the court found that "[s]ystemic misconduct" from prior years "does not elevate defendant's conduct to actionable discrimination where there is no evidence indicating a nexus between [the plaintiff's]

disability and the defendant's failure to fund her placement" at her preferred school in a particular year, because "[t]he evidence does not reasonably suggest the existence of a concerted campaign directed against [the plaintiff], but, rather, shows sporadic instances of negligence."[8]  ECF No. 11 at 6 (quoting *Alston*, 770 F. Supp. 2d at 299).  That decision is inapposite: it did not address a motion to dismiss, but rather a motion for summary judgment.  *Alston*, 770 F. Supp. 2d at 300. Indeed, the motion to dismiss in that case was denied.  *See Alston v. District of Columbia*, 561 F. Supp. 2d 29, 38–39 (D.D.C. 2008).  The court found that the plaintiff's allegations that DCPS repeatedly excluded her from receiving the full panoply of special educations services included in her IEP sufficiently alleged a cause of action under the Rehabilitation Act.  *Id.*  Here, too, the complaint alleges that DCPS repeatedly excluded A.U. from receiving a FAPE, with "no mention in the complaint of any causes other than the 'extent and severity of her disabilities.'"  *Id.* at 39 (quoting the complaint in *Alston*).

Accordingly, the undersigned finds that Plaintiffs' allegations are sufficient to state a claim under Section 504 of the Rehabilitation Act.  Moreover, because the pleading standard of the Rehabilitation Act is, as discussed, higher than that of that ADA, Plaintiffs have also stated a claim under the ADA.  Therefore, Defendants' motion to dismiss should be denied on this ground.

### C.    Failure to State a Claim as to OSSE's Oversight of DCPS

In Count IV, Plaintiffs assert that OSSE has violated their civil rights by failing to provide oversight of DCPS to ensure that it complied with OSSE's orders.  ECF No. 1, ¶ 30.  Plaintiffs cite statutory and regulatory provisions making the State educational agency—here, OSSE— "responsible for ensuring that the requirements" of providing a FAPE to eligible children are met. *Id.* (citing 20 U.S.C. § 1412(a)(11), 34 C.F.R. § 300.149. D.C. Code § 38-2601.01).  They then

---

[8] The undersigned recognizes that this interpretation of what might make out a violation of the Rehabilitation Act appears to conflict with the interpretation offered in *Torrence*.

allege that "[t]he failure of OSSE to take steps to ensure that DCPS complies with OSSE's Orders effectively and systematically deprives parents of their right to prompt enforcement of the IDEA and its implementing regulations" and that "OSSE's failure to provide adequate oversight of DCPS compliance with OSSE Decisions creates a loophole that DCPS intentionally exploits for the purpose of denying parents of disabled children their full enjoyment of their rights under the IDEA." ECF No. 1, ¶¶ 30–31. Defendants argue that this claim is barred by the statute of limitations and that Plaintiffs have failed to state a claim upon which relief can be granted.

### 1.    Statute of Limitations

Defendants contend that, since OSSE's last action on behalf of A.U.'s parents occurred on October 17, 2017, when OSSE issued its letter of decision stating that DCPS failed to provide A.U. educational services at the beginning of the 2017–2018 school year (ECF No. 1, ¶ 10.e), Count IV, which seeks to hold OSSE to account for its failure to enforce that decision must be dismissed "because the IDEA's two-year statute of limitations has expired." ECF No. 4 at 16. The argument, which Defendants make in a single sentence of their motion (*id.*), requires some unpacking.[9] Pursuant to the IDEA, a party may present a due process complaint to the agency "set[ting] forth a violation that occurred not more than 2 years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the complaint." 20 U.S.C. § 1415(b)(6)(B). Defendants appear to contend that, (1) because when Plaintiff's federal Complaint was filed on November 21, 2019 (*see* ECF No. 1), more than two years had passed since October 17, 2017, and (2) Plaintiffs had not yet filed a due process complaint with the agency

---

[9] The Court would be justified in finding this argument forfeit. *See, e.g., EEOC v. The George Washington Univ.*, No. 17-cv-1978 (CKK/GMH), 2020 WL 3489478, at *17 (D.D.C. June 26, 2020) ("'[P]erfunctory and underdeveloped argument, and arguments that are unsupported by pertinent authority' may be deemed forfeit." (quoting *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013))).

in order to exhaust their administrative remedies, then (3) Plaintiffs cannot now do so and are therefore barred from bringing a complaint in federal court.  As such, this argument is closely bound up with the IDEA's exhaustion requirements. [10]

Plaintiffs contend that OSSE's violation of the IDEA is an "ongoing violation."  As they would have it, "OSSE's ongoing refusal to take any action to require DCPS to comply with the IDEA" extends to "DCPS' actions delaying services for the 2018–2019 and 2019–2020 school years," all of which falls within the two-year statute of limitations.  ECF No. 8 at 17.  Thus, although Plaintiffs assert that they were excused from filing a due process complaint at all, they argue, in essence, that there is still time for them to do so if they must.  The argument is unsuccessful for two separate reasons.

Plaintiffs rely on the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan* as support for their "ongoing violation" theory.  ECF No. 8 at 16–17 (citing *Nat'l R.R. Corp. v. Morgan*, 536 U.S. 101 (2002)).  That case addressed exhaustion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and held that, when plaintiffs seek to recover for "discrete discriminatory acts," they must exhaust their administrative remedies within the statutory time period based on when that discrete act occurred.  *Morgan*, 536 U.S. at 113.  However, when plaintiffs claim a hostile work environment, exhaustion of the claim is timely as long as at least one objectionable act has occurred within the time period allowed to exhaust administrative remedies.  *Id.* at 118.  The rationale behind this rule is that "[h]ostile environment claims are different in kind from discrete acts," because their "very nature" involves conduct that "may not be actionable on its own."  *Id.* at 115.  That is, pursuant to *Morgan*, a claim that relies on repeated acts that would not themselves rise to the level of legally-cognizable discrimination

---

[10] Neither party addresses the proper timeliness analysis if exhaustion is excused but, as the undersigned has found that exhaustion should not be excused for any of Plaintiffs' claims, there is no need for further discussion.

may be exhausted if one of the relevant events occurs within the limitations period for administrative exhaustion.  However, claims based on discrete acts accrue when they occur and therefore may not take advantage of that rule.  Here, Plaintiffs allege that the delays in providing A.U.'s education services each school year—the annual action that OSSE allegedly failed to take steps to avoid—are separately actionable.  ECF No. 1, ¶ 11–13, 21.  Their "ongoing violation" theory therefore does not hold water.

Even if it did, however, Plaintiffs' "continuing violation" theory would not save this claim. Count IV alleges that OSSE violates Plaintiffs' civil rights by "fail[ing] . . . to take steps to ensure that DCPS complies with OSSE's Orders," and thereby "creates a loophole that DCPS intentionally exploits" to deny Plaintiffs "their full enjoyment of their rights under the IDEA." *Id.*, ¶¶ 30–31.  Thus, the claim focusses on OSSE's failure to enforce its own orders and decisions. But, OSSE has not issued any order or decision relevant to A.U.'s educational services since its October 17, 2017 letter of decision regarding the 2017–2018 school year, which found that "DCPS had not provided services to A.U. since the start of [that] school year." *Id.*, ¶ 10.e.  That is, OSSE has not engaged in the conduct that Plaintiffs find objectionable—failure to enforce its own orders—since that time, because there were no orders that needed to be enforced.  Thus, even if "*DCPS'* actions delaying services for the 2018–2019 and 2019–2020 school years fall within the statute of limitations" (ECF No. 8 at 17 (emphasis added)), that is immaterial because there are no allegations that *OSSE* failed to enforce an order or decision with regard to those school years.

The undersigned therefore recommends dismissing Count IV with prejudice because, as discussed above, Plaintiffs have not shown that administrative exhaustion should be excused and such exhaustion is now time-barred.[11]

---

[11] A time limitation on the period in which a claimant must initiate the process of administrative exhaustion may be equitably tolled.  *See, e.g., Niskey v. Kelly*, 859 F.3d 1, 9 (D.C. Cir. 2017) (finding that the plaintiff was entitled to

2.      Sufficiency of Factual Allegations

Even assuming that Count IV might be timely, the factual allegations in the Complaint fail to make out a cognizable claim.  As noted, this count alleges that OSSE is liable for its "failure . . . to take steps to ensure that DCPS complies with OSSE's Orders," which "effectively and systematically deprives parents of their right to prompt enforcement of the IDEA and its implementing regulations in the District of Columbia" and which "creates a loophole that DCPS intentionally exploits for the purpose of denying parents of disabled children their full enjoyment of their rights under the IDEA."  ECF No. 1, ¶¶ 30–31.  As discussed above, although Plaintiffs fail to identify the statutory basis for this claim, it appears to be brought pursuant to Section 1983.

*K.W.* addressed a claim that was pleaded in almost identical language.  *Compare* Complaint, ¶¶ 43–44, *K.W. v. District of Columbia*, No. 18-cv-2578 (RMC), ECF No. 1 (alleging that "[t]he failure of OSSE to have a system in place to ensure that local education agencies comply with the Orders of administrative hearing officers acts to effectively interfere with the civil rights of disabled students" and that "[t]he failure to provide adequate oversight and ensure compliance with OSSE Hearing Officer Decisions creates a loophole that DCPS intentionally exploits for the purpose of denying parents of disabled children with access to the Ordered remedy, and makes a mockery of IDEA's procedural safeguards"), *with* ECF No. 1, ¶¶ 30–31 (alleging that "[t]he failure of OSSE to take steps to ensure that DCPS complies with OSSE's Orders effectively and systematically deprives parents of their right to prompt enforcement of the IDEA and its implementing regulations in the District of Columbia" and that "OSSE's failure to provide adequate oversight of DCPS compliance with OSSE Decisions creates a loophole that DCPS intentionally exploits for the purpose of denying parents of disabled children their full enjoyment

---

equitable tolling for a period of time that elapsed prior to his initiating administrative procedures).  Here, Plaintiffs have not suggested that equitable tolling should apply.

of their rights under the IDEA").  In rejecting that claim as insufficiently pleaded, the court first

noted that the plaintiffs in *K.W.* had not alleged "that they had engaged with OSSE or its process."

*K.W.*, 385 F. Supp. 3d at 42.  The court also found, however, that the plaintiffs' "bare legal

conclusion that OSSE 'effectively interfere[s] with access to the civil rights of disabled students

such as K.W. and his parents'" was "not sufficient to state a facially plausible claim for relief."

*Id.* (alteration in original) (quoting the complaint in *K.W.*).

Plaintiffs focus on the first point from *K.W.*, asserting that, in this case, Plaintiffs "have

done precisely what was missing in *K.W.*" by seeking "OSSE's help with DCPS" and securing

"many rulings that DCPS was violating [the] IDEA by not providing A.U. timely educational

services."  ECF No. 8 at 17.  But that does not get Plaintiffs very far.  Their engagement with

OSSE does not remedy the fact that Plaintiffs have still provided only a "bare legal conclusion,"

*K.W.*, 385 F. Supp. 3d at 42, that OSSE "effectively and systematically deprives parents of their

right to prompt enforcement of the IDEA," ECF No. 1, ¶ 30.  There are no factual allegations as

to OSSE's supervisory or enforcement practices (or lack thereof).  Instead, Plaintiffs' argument

appears to be that (1) OSSE has ruled in favor of Plaintiffs' complaints about the timely provision

of services to A.U. in connection with three school years (2011–2012, 2012–2013, and 2017–2018

(*see* ECF No. 1, ¶ 10.b–c, e)); (2) DCPS has failed to comply or failed to promptly comply with

those decisions; therefore (3) OSSE must have failed to adequately enforce its decisions and

oversee DCPS.  Such an argument echoes the doctrine of *res ipsa loquitur*, "literally, 'the thing

speaks for itself,'" which allows a court to, "without direct proof," infer causation "from the very

nature of events."  *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1048 (D.C.

Cir. 2014).  However, "[r]*es ipsa loquitur* is not basis for municipal liability."  *Home v. Town of

North Andover*, 854 F. Supp. 2d 131, 146 (D. Mass. 2012); *see also Brashear v. Bd. of Cty.*

*Comm'rs of Okla. Cty.*, 402 F. Supp. 3d 1279, 1286 (W.D. Okla. 2019) ("But *res ipsa loquitur* is a potential basis for inferring liability for negligence, and negligence is an insufficient basis for a § 1983 claim.").

The deficiency of Plaintiffs' allegations is cast into sharp relief when compared to the pleading requirements for a claim for municipal liability under Section 1983. That statute

> makes it unlawful for a person acting under color of state or District of Columbia law or custom to deprive another of any federal constitutional or statutory rights. To state a claim under § 1983 against the District, a plaintiff "must allege not only a violation of [her] rights under the Constitution or federal law, but also that the municipality's custom or policy caused the violation."

*Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 57 (D.D.C. 2011) (footnote omitted) (citations omitted) (quoting *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004)). According to the D.C. Circuit:

> whether [the plaintiff] sufficiently alleged that a District custom or policy caused the claimed violations of his constitutional rights. Causation would exist if, for instance, the municipality or one of its policymakers explicitly adopted the policy that was "the moving force of the constitutional violation." Or a policymaker could knowingly ignore a practice that was consistent enough to constitute custom. Or the municipality may not have responded "to a need . . . in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations."

*Warren*, 353 F.3d at 39 (second alteration in original) (citations omitted) (first quoting *Monell*, 436 U.S. at 694, then quoting *Baker v. District of Columbia*, 326 F.3d 1302, 1305 (D.C. Cir. 2003)). Moreover, "[t]o satisfy the element of causation, a plaintiff must allege an 'affirmative link'" between the policy, practice, or custom and the violation. *Dickerson v. District of Columbia*, 315 F. Supp. 3d 446, 452 (D.D.C. 2018) (quoting *Baker*, 326 F.3d at 1306). Count IV, as pleaded in Plaintiffs' complaint, does not satisfy those requirements.

In sum, the undersigned recommends granting Defendants' motion to dismiss Count IV on grounds of failure to state a claim.

D.      **Claims against Individual Defendants in their Official Capacities**

Plaintiffs seek dismissal of Chancellor Ferebee, Superintendent Kang, and Mayor Bowser—all of whom have been sued in their official capacities—because they are redundant of the claims against the District.  ECF No. 4 at 7.  Plaintiffs oppose that request, arguing that "[i]f the allegations are proved, specific injunctive and declaratory relief may be issued against DCPS, OSSE, and the individual defendants."  ECF No. 8 at 4.

In 1985, the Supreme Court asserted in *Kentucky v. Graham* that, since its 1978 decision in *Monell*, "[t]here is no longer a need to bring official-capacity actions against local government officials" because "local government units can be sued directly for damages and injunctive or declaratory relief."  *Graham*, 473 U.S. 159, 167 n.14 (1985).  Courts therefore regularly dismiss individuals sued in their official capacity where the municipality has also been sued for the same conduct.  *See, e.g.*, *Day v. District of Columbia*, 894 F. Supp. 2d 1, 33 (D.D.C. 2012) ("[T]he Court is persuaded that for reasons of judicial economy and lack of prejudice there is no reason to refrain from dismissing the redundant claims against the District's officials."); *see also, e.g.*, *Kline v. Cleveland Cty.*, No. 19-cv-00197, 2020 WL 2858238, at *2 (W.D.N.C. June 2, 2020) (dismissing official capacity claims as redundant of claims against the local government entity); *Grim v. Baltimore Police Dep't*, No. 18-cv-3864, 2019 WL 5865561, at *16 (D. Md. Nov. 8, 2019) (same); *Cano v. Cohen*, No. 1:18-CV-11550 , 2019 WL 4933580, at *4 n.5 (S.D.N.Y. Oct. 4, 2019) (same); *Rosas v. Baca*, No. CV 12-00428, 2012 WL 933609, at *2 (C.D. Cal. Mar. 20, 2012) (same); *Ade v. City of Chicago*, No. 96 C 4750, 1996 WL 745334, at *1 (N.D. Ill. Dec. 27, 1996) (same); *cf., e.g.*, *Good v. Cty. of Los Angeles*, No. 15-cv-4290, 2016 WL 9450072, at *1 (C.D. Cal. Jan. 29, 2016) (striking official capacity claims as duplicative and wasteful pursuant to Rule 12(f) of the

Federal Rules of Civil Procedure).  Dismissing such claims is not required, but it is well within the Court's discretion.  *See, e.g.*, *Day*, 894 F. Supp. 2d at 33.

Despite this considerable authority, Plaintiffs cite three cases—*Tschanneral v. District of Columbia Board of Education*, 594 F. Supp. 407, (D.D.C. 1984); *Kantor v. District of Columbia*, Civ.A. No. 90-0828, 1990 WL 95492 at *1 (D.D.C. June 27, 1990); and *Vakassian v. Washington Metropolitan Area Transit Authority*, No. 05-cv-0741 (JDB), 2005 WL 3434794 (D.D.C. Dec. 14, 2005)—which they insist mandate that, while official capacity claims might be redundant in cases where plaintiffs seek only damages from a municipality, "government individuals *must* be named where injunctive relief is sought."  ECF No. 8 at 5.  Those cases are not particularly helpful to Plaintiffs' position.

In *Tschanneral*, the plaintiffs sued the D.C. Board of Education and a number of municipal officials in connection with an action under the predecessor statute to the IDEA.  594 F. Supp. at 408.  The court held that the D.C. Board of Education was not a suable entity but allowed the case to go forward as to injunctive relief sought from the individual defendants sued in their official capacities.  *Id.* at 409.  It thus appears that the individual officials were retained as defendants because no municipal defendant was left in the case.  That is, the claims against those officials were not redundant of any other claim remaining in the case once the Board of Education was dismissed.  *See Ramos v. City of San Antonio*, No. SA-05-CA-0500, 2005 WL 3046245, at *2 (W.D. Tex. Nov. 3, 2005) ("[T]he reason the court [in *Tschanneral*] upheld that official capacity claim for injunctive relief against the individual Board members was because it found the Board itself was not to be a suable entity, thus distinguishing it from the present case where both the City and the County are suable entities.").

33

*Vakassian v. Washington Metropolitan Area Transit Authority* presents a similar scenario to that presented in *Tschanneral*—one in which the plaintiffs sought injunctive relief against both an entity that enjoyed Eleventh Amendment immunity and an official who did not.  In that case, when the court dismissed the claims against the Washington Metropolitan Area Transit Authority ("WMATA")—which is the product of an interstate compact that is entitled to Eleventh Amendment immunity for certain sorts of claims—it allowed the official capacity claims against WMATA's chief of police to go forward because that official was not entitled to such immunity. *Id.* at *2, 4.  As in *Tschanneral*, the official capacity claims were not duplicative of an extant claim against a governmental entity.  *Cf. Kerrigan v. Philadelphia Bd. of Election*, No. CIV. A. 07-687, 2008 WL 3562521, at *29 (E.D. Pa. Aug. 14, 2008) (declining to dismiss official capacity claims against individual defendants where the defendant governmental entity sought dismissal based on Eleventh Amendment immunity).  Here, however, the District clearly has the capacity to be sued for injunctive relief and is not entitled to Eleventh Amendment immunity.  *See, e.g.*, *Bunch v. District of Columbia*, 151 F. Supp. 3d 148, 152 (D.D.C. 2015) ("[T]he Eleventh Amendment does not even apply to the District, because it is a municipality.").  Plaintiffs cannot therefore argue that dismissing the official capacity claims against Chancellor Ferebee, Superintendent Kang, and Mayor Bowser as redundant would prejudice them by eviscerating their claims for injunctive relief.

*Kantor* is slightly more problematic.  The case does state that "[i]n order to obtain injunctive relief, plaintiffs must amend their complaint so as to name individual members of the [D.C.] Board [of Education] as defendants," even though the District of Columbia was a named defendant.  1990 WL 95492 at *1 (D.D.C. June 27, 1990).  However, the court relied exclusively on *Tschanneral* for that proposition and failed to discuss *Monell*, which made clear that injunctive

34

relief is available against a municipality, or *Graham*, which emphasized that, consequently, "[t]here is no longer a need to bring official-capacity actions against local government officials." *Graham*, 473 U.S. 159, 167 n.14 (1985). The legal basis of the decision in *Kantor* is therefore questionable.

Plaintiffs' underlying argument seems to be similar to one presented in *Day*: that "the need for public accountability and the effective implementation of any injunctive relief counsels against dismissal of the individual defendants." 894 F. Supp. 2d at 33. Here, the better path is to follow the lead of the court in *Day*, which found that, because the plaintiffs had "fail[ed] to explain why the harm they have allegedly suffered cannot be remedied in an action against the District alone," the goal of judicial economy coupled with the absence of any prejudice to the plaintiffs counseled in favor of "dismissing the redundant claims against the District's officials." 894 F. Supp. 2d at 33. Dismissing the individual Defendants will streamline this case and not prejudice Plaintiffs. The undersigned therefore recommends granting the motion to dismiss on this ground.

### E.      Service on Superintendent Kang

Finally, Defendants seek dismissal of Superintendent Kang on the basis of insufficient service of process, asserting that she "received her summons and complaint via regular mail[ ] rather than certified mail," as required by District of Columbia law, which is incorporated into federal procedure through Rule 4(j)(2) of the Federal Rules of Civil Procedure  ECF No. 4 at 8–9; *see also* Fed. R. Civ. P. 4(j)(2)(B); D.C. Sup. Ct. Civ. R. 4(c)(4); 4(j)(3)(E). As noted above, the plaintiff has the burden to establish that each defendant was properly served. *Hilska*, 217 F.R.D. at 20; *see also, e.g.*, *Chen v. District of Columbia*, 256 F.R.D. 263, 266 (D.D.C. 2009) ("The law is clear that the party on whose behalf service is made has the burden of establishing its validity

when challenged.").  In the face of Defendants' challenge to service on Superintendent Kang, Plaintiffs assert the following:

> To the extent that Hansuel Gang [*sic*] may not have been properly served, the plaintiffs take no position, as service to Ms. Gang [*sic*] was issued in the identical matter as it was to all other defendants**.** Ms. []Gang [*sic*] is obviously aware of the present lawsuit as counsel has entered an appearance on her behalf. Nevertheless, should the court decide to dismiss Ms. Gang [*sic*], plaintiffs will subsequently file a motion to re-issue the summons and perfect service so as to join this defendant.

ECF No. 8 at 5.  That is, Plaintiffs have made no attempt to establish that Superintendent Kang was properly served—indeed, they are explicitly agnostic on that issue.  If there is an argument to be discerned in that paragraph, it is, perhaps, that Superintendent Kang has notice of the action, so any defect in service should be overlooked.  However, "[w]hile the purpose of service is to give a defendant notice of the claims against it, notice alone 'cannot cure an otherwise defective service.'" *Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004) (quoting *Zen Music, Inc. v. CVS Corp.*, No. 98 Civ. 4246, 1998 WL 912102, at *2 (S.D.N.Y. Dec. 30, 1998)).  In light of those principles, the undersigned recommends dismissing the claims against Superintendent Kang pursuant to Rule 12(b)(5) without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' motion to dismiss (ECF No. 4) be **GRANTED**.

*         *         *         *         *

The parties are hereby advised that under the provisions of Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made,

and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Date:   July 13, 2020

                                                _____

                                                G. MICHAEL HARVEY
                                                United States Magistrate Judge